Yes, good morning. May it please the Court. I'm Jocelyn Burton, the Attorney for Plaintiff and Appellate Elias Nasiri. I'd like to reserve two minutes for rebuttal. Okay, just keep an eye on your clock. Okay, thank you. I will. There are, although there are seven issues before this Court in this appeal, there are essentially five overarching issues here. And one is whether, with respect to a defaulted defendant, any further inquiry at trial or on a motion for default is limited to the sufficiency of the complaint as to the determination of damages. The second issue is whether or not the district court improperly permitted Defendants Lopez and Murga to represent a defaulted corporate defendant at the trial. A third issue, that overarching issue, is whether under California Labor Code Section 1194, plaintiff was entitled to attorney's fees. A fifth issue is whether the district court improperly granted summary judgment to personnel staffing group. And the fourth issue, the final issue, is whether the court improperly denied the motion to amend the judgment after trial. This is a wage and hour case involving Plaintiff Elias Nasiri. He was employed by Tag Security Protective Services as a security guard from June or July 2015 until December 2016. An issue were claims of overtime and meal breaks. Mr. Murga. Can I ask you a question? Yes. It's a little bit, maybe it's not unusual, but you're asking the district court to ignore contradictory evidence at trial and just look at factual allegations in the complaint, in both your JMAL argument and your default judgment argument. And it just seems odd that the district court would be required to ignore evidence at trial that contradicts the factual allegations. It just, you know, the default judgments, they're disfavored, our law promotes deciding cases on the merits, and they're totally discretionary. And, you know, most plaintiffs actually would love a trial and do want a decision on the merits. So tell us how to square all this. Well, under Ninth Circuit precedence, with regard to the factual, under Ninth Circuit precedence in Getty versus United Financial Court, because TAG Security Protective Services was in default, any inquiry is limited to the four corners of the complaint. And what has traditionally been the issue with regard to the, if there are any remaining issues to be tried, they're primarily limited to determining the damages and the prospective damages, the liability as to the remaining defendants, and the damages with regard to the defaulted corporation. Other than that Third Circuit case that was cited by Appelese, there's no, there's actually, there's no authority for the proposition that the district court is permitted to go beyond the factual allegations of the complaint to go through this wholesale liability analysis with respect to defaulted defendants. So you're saying, you're saying that if the trial court is hearing evidence in a case, and as a result concludes that the allegations in the complaint with respect to the party claimed to be defaulted are completely wrong and unsupportable, the trial court is required to enter a judgment inconsistent with the facts the court hears at the trial? Is that what you're arguing? That's, that's, unless, unless this court is going to create, ignore prior precedent and create a new rule, that's, that's the current rule. I mean, that's what the case is told. That assumes that the court is required to enter a default judgment. Isn't that discretionary? The fact, there is some discretion as to whether the court is, is can, is required to order a default judgment. But when the, when, when, when the considering the issue, the consideration should be limited to the four facts for the facts alleged in the complaint. But if you don't have to enter default judgment, then why can't you go to trial? And then if you go to trial, why can't you consider the trial evidence? Because the, because the corporation cannot answer. I mean, the corporation is already, it can't be a defense presented on behalf of the corporation. Now, there is, I admit, there is no case law that says what happens if the judge, the district court refuses to enter a default judgment. But in the instances in which they were, they did, the courts have refused to enter a default judgment. That's because the allegations in the complaint were insufficient to support the default. What evidence do you have that Mr. Nasiri was ever employed by TAG? Can you point anything in the record? Other than your complaint, which I know you want everyone to go back to the complaint, but what evidence is there? Is there any? Well, the organization, the, of the, of the incorporated entity, no. Could I ask you to address your claim against PSG for a moment? The, you have this employment agreement that says, you know, he's an employee. So that's obviously a good, a hopeful fact for you. But the district court cited the California appellate decision in Fitrell that says that, you know, the label that the parties attach doesn't really matter if the facts are otherwise. And then it said, you know, all of the facts about what actually happened are otherwise. So why, where did the district court go wrong in your view? Well, well, you know, as an initial matter, I mean, they did clearly state that he was an employee. They did, as a part of that, of that particular agreement, maintain the right to hire and fire. They did in the, they were the entity listed on the paychecks as his employer. And California law requires you to issue the paychecks as the employer. They also issued the W-2 to Mr. Nasseri. And there's a presumption that the employer listed on the W-2 is actually an employer. But all of those things were true in Fitrell. And the court there said, you know, under California law, that's not, I mean, that was also a summary judgment case. They said that wasn't enough to create a tribal issue of fact. So. Well, there are other issues, there are other cases, though, that do. You know, Martinez versus Combs. The courts held that there are three alternative definitions, control wages, hours or working conditions to suffer or permit to work or to engage, creating a common law relationship. And here under the contract, there was an engagement. Similarly, in Employers Depot versus San Miguel Produce, the employers, Employers Depot leased employees on a temporary basis to other businesses. And the court held that they were an employer. Similarly, the Matai case that we cited in our brief, the courts found that they were an employer. Can I ask you, what do you make of this fact that the employer representative signature is Anthony Murga and there's no signature of anyone from PSG or KBS on the employment agreement? He was signing it as the agent for personnel staffing group. You know, and back to the Frutel decision, it is distinguishable. There, the court held that as a payroll provider, Payday California did not exercise control over wages. And unlike Frutel, here there was an actual agreement where personnel staffing group stated that it was an employer. They weren't just limited to being a payroll provider. If we remanded the case, if we went along with you only on that issue, summary judgment for PSG, is the plaintiff limited to the damages that have already been found in the case? Well, we would argue no, because there was no determination as to liability as to personnel staffing group. So your position is the damages, if personnel staffing group were the plaintiff's employer, the damages could be different than those already found by the jury? I mean, well, there is no determination as the liability of personnel staffing group. So I don't understand how the damages could... Lateral estoppel on damages. I would argue no, because there are some other outstanding damages issues. For example, the split shift premium issues that we've argued that the court failed to consider as well. One of the other issues that I'd like to bring to your attention was the attorney's fees issue. Under 1194, the attorney's fees were not discretionary. I know that we have an abuse of discretion standards, but the discretion is as to the amount, not whether there should be an award at all. California Labor Code 1194 holds that in an instance where there's an award of overtime or minimum wages, attorney's fees are required. But the statute says reasonable attorney's fees, so it is in the court's discretion to decide whether your fees are reasonable, right? Well, that's true. And I did say that they do have discretion as the amount, but they do have to make some award. Well, if none of the fee request is reasonable, then why are they mandated to award fees? The analysis should be based on the standards set forth in Cyrano v. Priest and the Lone Star. That should be where the discretion lies. No award is not reasonable attorney's fees. You're down to about two minutes. Do you want to reserve? Yeah, I'd like to reserve. Thank you. You may. Weisbuck. May it please the Court, Mike Weisbuck on behalf of Anthony Merga, Gabriela Lopez, and TAG Security Protective Services, Incorporated. I'm planning to argue for 12 minutes, after which Ms. Masick is on Zoom to argue for PSG. I want to clarify two points in particular. On attorney's fees, even putting aside their forfeiture of the issue, the local meet and confer requirement did apply. Under civil local rule 3-9A, the rules apply equally to parties representing themselves. In a docket 252 in his post-judgment order setting deadlines, Judge Cousins expressly instructed counsel to meet and confer with, quote, any self-represented parties before filing a motion for attorney's fees. So that double violation eliminates the need to reach any other fee issues. But I also want to clarify that the California rule, giving trial courts broad discretion to deny grossly disproportionate fee requests altogether, applies even when the statutory fee provision to issue entitles a party to fees. That's under the California Supreme Court's decision in Ketchum v. Moses. And here the district court didn't abuse its discretion by considering the relevant factors based on its years of observations and concluding that this fee request implicated that established principle. Next, it's not just that the facts alleged in the complaint were wrong. They were also inconsistent with the judgment in favor of Lopez. And I think it's helpful to consider Lopez in particular. There was no dispute that she had no involvement with his sole proprietorship. So it was logically impossible for Nasiri to succeed on his claims against Lopez without showing that Tagg should be treated as his employer as well. At page 296 of the record, opposing counsel conceded that the claims against Lopez were entirely derivative of the claims against Tagg. So a judgment against Tagg would have been incongruous with the judgment in favor of Lopez, regardless of when the judgment against Tagg occurred. Can I ask you, would you agree there's a little ambiguity about whether the local civil rules apply when someone's pro se? Well, it was my client who expressed it. Well, it says counsel for the respective parties have to meet and confer. And if there's no counsel, then do you think it's clear that they have to meet and confer? I mean, Judge Cousin's order is a separate issue. Right, well, what I would say is that Judge Cousin's order cleared up that ambiguity because he expressly instructed counsel to meet and confer before filing the motion. Also, the local rules are full of references to counsel. And if you don't interpret civil local rule of 3-9A to make those rules apply equally to self-represented parties acting as their own counsel, then they would not have to follow many of the rules and the rules would sort of fall apart. But I think this court could simply rely on Judge Cousin's express instructions. As for the back-to-the-default judgment and Rule 50 issue, I think my point there is in addition to the fact that a judgment would have been incongruous and an abuse of discretion under this court's decision in First TD so the court never would have entered judgment against TAG, I think that dovetails with the procedural arguments as to the Rule 50 issue. That's on plain error review. And because any judgment... If TAG is in default, why are you here for them? Can you be here for them? Can they even be here? They're in default. They've never set aside default, have they? Right. Well, this court did enter an order permitting me to represent TAG and file a brief on their behalf in October with no objection from the other side. But I would also add that I don't think there's any authority for the idea that a party who prevailed below and had judgment entered in its favor has to move for relief from this court just to argue for affirmance. The single case that they cite about this is a bankruptcy creditor who defaulted before the bankruptcy court and the bankruptcy appellate panel, then sought to appeal despite the absence of any appealable order, a final default judgment. So it's really neither here nor there. And even if you ignore all that, you can affirm on any ground supported by the record. The arguments I'm making for TAG are the reasoning that Judge Cousins made in his decision. Which TAG are you representing? The corporate entity, but I'm also representing Mr. Merga, who was effectively the sole proprietorship. Okay. And Ms. Lopez. Ms. Lopez. So just to make sure I clear up any concerns about the procedural things that happened on Rule 50, it would have needed to affect the outcome in some way. And here, because the judgment against TAG would have been incongruous, it couldn't have affected the outcome because the district court never would have entered judgment against TAG. Regardless, there's no clear or obvious error. There's simply not any clear case law from this circuit saying that a district court can't enter judgment as a matter of law sua sponte. I also heard opposing counsel reference the split shift premium issue. So just briefly, the only dates that they're pressing for split shifts are the December 20th and December 21st cash app payments in the record. But Nasiri specifically testified that those payments were actually advances and were not for side jobs, worked on those days. So once you consider that testimony and the standard of review where there has to be an absolute absence of evidence to support the jury's verdict on this front, I think that kind of resolves that entire issue. Thank you. Unless your honors have any further questions, I'm happy to rest on the briefs. Oh, can I ask a question? Can you respond to Ms. Burton's point, how are no fees reasonable? Yeah, I'd love to. So under a long line of California cases, an inflated fee request is grounds to conclude that the only reasonable fee is no fee at all. And that's a phrasing that the U.S. Supreme Court has used, the California courts have adopted. So the idea there is even if a statute purports to entitle a party to reasonable fees, that might require the court to make a finding as to what amount of fees is reasonable. But it doesn't preclude the court from finding that that reasonable amount is zero. And specifically when there's an inflated fee request, that's a special circumstance where trial courts have broad discretion to make that finding. Okay, one last question. Do you concede that after all the appeals are over, Ms. Burton can try to add debtor successors? Ms. Burton can file a notice motion to add debtor successors to the judgment, unless my client has already paid the judgment, which would moot the entire issue. And I think there's a good chance that that will happen. Thank you. Thank you. Ms. Masick. Good morning, Your Honors. May it please the Court, Jenna Masick from Corey Richardson, LLP, on behalf of Appellee Personal Staffing Group, LLC, also known as PSG. PSG respectfully requests that this court uphold the order of the district court granting PSG's motion for summary judgment. The undisputed facts are more than sufficient here to establish that PSG was not Mr. Nusseri's employer under California law or the FLSA. So what do we do with the fact that they drafted and he signed a contract that said he's their employee? Right, so two points on that, Your Honor. First, there's no evidence in the record that Mr. Maruga had the authority to sign on behalf of PSG. So we… Why isn't that a factual material dispute that would then just say summary judgment was wrongly granted? No, I wouldn't say that is, and here's why. Because even if the agreement was enforceable, on this record, the overwhelming evidence shows that PSG had absolutely no control over the employee's wages, hours, working conditions. It did not suffer or permit him to work, and it also did not engage him to create a common-law employment relationship. But if, I mean, if, as I think you acknowledge as the premise of at least this line of inquiry, if the contract is valid, the contract, it doesn't just use the label employee. It says, you know, he has to abide by various policies, including the policies in the employee handbook. It says they can terminate him if he violates the sexual harassment policy. You know, all of that suggests that they have the right, whether or not they're exercising the right, they have the right to control these certain aspects of his conduct, right? I mean, again, I would say this, you know, the record shows that this isn't binding on PSG. But even if it was, I would say that that's still, I mean, if you look at the actual contract, in the at-will employment paragraph, it says, I understand and agree that either KBS or I can terminate our employment relationship at any time. And that our, to me, is important because as the payroll provider, that's what I, what they're referring to, you know, our relationship as a payroll provider. It's not saying that PSG can terminate in a series employment at tag. Well, then what? I mean, when we go a couple pages later, there's like all this stuff about, you know, reporting harassment and violations of this policy will subject an individual to disciplinary action up to and including immediate termination. I mean, like, what is that doing in the agreement if they don't have the power to control? Right. It's a good question, Your Honor. I would just point, Your Honors, to the record where, you know, Mr. Nasiri himself never said that he understood PSG to be his employer, that he understood after reading these policies that he was an employee of PSG. I mean, there's really no evidence that PSG could hire or fire Mr. Nasiri. In fact, there's evidence from Mr. Maruga himself who said that he had the exclusive power to hire and fire employees, and that's on the supplemental excerpts of record, page 43. What about the W-2? It says the employer's name is Personal Staffing Group, LLC, and the wage statement says, you know, paid by employers outsourcing in service to Personal Staffing Group. Right. So under Futrell, which addressed this same issue, they held that payroll documents themselves cannot, as a matter of law, find an entity to be the employer because the test that controls is Martinez. And in order to find an entity qualifies as an employer, the plaintiff has to show that, under California law, that the alleged employer qualifies under one of those three tests. So to answer your question, just by putting their name on a wage statement or a W-2, that's not enough to show the control under Martinez that's necessary to find him to be an employee of this alleged employer under California law. Do you have a view on the question Judge Lynn asked Ms. Burton, which is, if we were to find that PSG was an employer, or if we were, I should say, if we were to conclude that the district court erred in determining at summary judgment that PSG was not an employer, so that needed to go back for a trial on that issue, would the damages be limited to what had already been found? I would say they would be limited to what had already been found, since there was already a full trial in the merits as to what the damages should be. I don't see PSG qualifying as an employer, which we would dispute, changing the amount of damages that Mr. Nassiri suffered. Well, you're not conceding those damages, are you? I'm not, no. You're arguing they're capped. Is that what you're saying? Correct, correct. Thank you, Your Honor. Can you explain what is the relationship between PSG, KBS staffing, Mr. Murga, and TAG? Is there any? Right, so it's a good question. So PSG had a contract with KBS, which is what its broker service. So PSG's contract was directly with KBS. Who is the broker in that relationship? KBS. Okay. And then KBS had an agreement with TAG, and that's how all three parties were somewhat connected, but there was no direct connection through from PSG directly to TAG. There was no contract there. What happened was PSG performed payroll services for KBS's clients, and one of these clients was TAG. And I'd also just like to point out, for the record, that the time period we're talking about is two payroll periods during Mr. Nassiri's employment, and over the, I think, roughly a year and a half that he worked at TAG. Looks like there are no further questions. If you want to wrap up. Yep, sure. If there's no further questions, I'll submit. Thank you, Your Honors. Thank you. Ms. Burton? Yes. I'd like to point out a few issues. As to the issue with regard to the complaint and Mr. Murga, personnel staffing group's motion for summary judgment was based primarily on a declaration by Mr. Darren Grottolo, and Mr. Grottolo, he testified that he saw the contract between Mr. Nassiri and KBS staffing, and that's at ER 796 and ER 914. And he also said that he does not know whether Mr. Murga was an agent of personnel staffing group, and that's at ER 797. So, the issue of whether or not, I find they can't disaffirm the contract based on the fact that Mr. Murga was not an agent because there's no evidence that he was not. Further, there were more than two pay periods involved here. Thirdly, with regard to the whole issue of the attorney's fees, although Appelli's counsel stated there are case law where no fees are awarded, he failed to cite any. And also, the whole notion of the Rule 50A motion that somehow tags security protective agent. Could you answer Judge Lynn's question? If we remand on the summary judgment motion as to PSG, are you limited to the damages at trial? No, because each employer, there could be factual issues with regard to personnel staffing group as an employer that differ from Mr. Murga and tag security protective services. Thank you, Ms. Burton. Thank you. We thank all counsel for their arguments, and we note that Mr. Weisbuck, you were appearing pro bono by appointment to this court. The court appreciates your service. The case is submitted. Thank you.
judges: MILLER, KOH, Lynn